UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL C. KINLEY, ) | |
| ) | |
|    *Plaintiff*, ) | |
| ) | |
|    *vs.* ) | 1:12-cv-740-JMS-DKL |
| ) | |
| MICHAEL ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
|    *Defendant*. ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Michael C. Kinley applied for Supplemental Security Income benefits on November 10, 2008. His application was denied both initially and after reconsideration by the Defendant, Commissioner of the Social Security Administration (the "Commissioner"). Administrative Law Judge James R. Norris (the "ALJ") held a hearing in November 2010 and later issued a decision that Mr. Kinley was not entitled to disability benefits. Mr. Kinley has filed this action under 42 U.S.C. § 405(g), asking the Court to review his denial of benefits. For the following reasons, the Court vacates the ALJ's decision and remands this matter for further proceedings.

## I.
### RELEVANT BACKGROUND

Mr. Kinley was nineteen years old at the time he filed his application in November 2008. [Dkt. 14-2 at 25.] He has a history of muscular dystrophy from childhood, a history of partial complex seizures that started at the age of thirteen, and is functionally illiterate. [*Id.* at 37-38, 46.] Mr. Kinley claims that he is disabled because of the following severe impairments recognized by the ALJ: asthma; seizures; congenital myopathy, type II atrophy; and borderline

intellectual functioning. [*Id.* at 19.] He also alleges that he suffers from frequent migraines. [*Id.*]

Mr. Kinley received special education assistance and finished the 10th grade. [Dkt. 18 at 7.] He lives with his parents, [dkt. 14-5 at 4], who are his legal guardians, [dkt. 14-10 at 103]. For a short time, Mr. Kinley worked five or six hours a week at a pharmacy through a vocational program at the high school, but he lost that job because he had to miss work too many times because of his medical conditions. [Dkt. 14-2 at 54-55.] At the hearing before the ALJ, Mr. Kinley testified that when he stood on his feet at work his legs would start cramping and he had to rub them. [*Id.* at 52.] After working for a few hours, Mr. Kinley would need to take pain medication and lay down for 2.5 hours until his legs stopped cramping. [*Id.*]

Mr. Kinley has received medical treatment, and the relevant portions of that treatment will be described in detail as needed to address the issues raised on appeal. Additional facts will be provided as necessary.

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

(1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [he] perform his past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After step three, but before step four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

### III.
### THE ALJ'S DECISION

Using the five-step sequential evaluation set forth by the Social Security Administration, the ALJ determined that Mr. Kinley was not disabled. [Dkt. 14-2 at 26.]

At step one of the analysis, the ALJ found that Mr. Kinley had not engaged in substantial gainful activity[1] since the alleged onset date of his disability. [*Id.* at 19.]

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a)-(b).

At step two, the ALJ identified four severe impairments[2] from which Mr. Kinley suffers: asthma; seizures; congenital myopathy, type II atrophy; and borderline intellectual functioning. [Dkt. 14-2 at 19.]  The ALJ found that although Mr. Kinley alleged frequent migraines, "the medical evidence of record fails to support that these migraines occur at a frequency that would impose any work restrictions.  Accordingly, said impairment is nonsevere." [*Id.*]

At step three, the ALJ considered various listings, but found that Mr. Kinley's impairments did not meet or medically equal those listings.  [*Id.* at 18-20.]  Mr. Kinley does not challenge the ALJ's determination that he did not meet or medically equal a listing.  Mr. Kinley does, however, challenge the adequacy of the ALJ accounting for his moderate difficulties in concentration, persistence, and pace by limiting him to simple, repetitive tasks.  [*Id.* at 21.]

At step four, the ALJ found that Mr. Kinley had the RFC to perform medium work, with various limitations.  [*Id.*]  Specifically, the ALJ found that Mr. Kinley could not "more than occasional balancing and climbing of stairs; frequent stooping, kneeling, crawling; no climbing of ladders, ropes, or scaffolds; avoid exposure to unprotected heights and dangerous hazards; no concentrated exposure to temperature extremes, fumes and respiratory irritants; only simple and repetitive works; only verbal instructions; only occasional contact with general public and coworkers; and no requirement for high stress or high level of production."  [*Id.* at 21-22.]

In connection with step four, the ALJ relied on Mr. Kinley's activities of daily living, among other things, to conclude that his "allegations of pain, other symptoms, and functional limitations are not found to be entirely credible."  [*Id.* at 24.]  The ALJ also afforded limited weight to the opinions of Mr. Kinley's treating sources.  [*Id.* at 25.]

---

[2] An impairment is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

At step five, the ALJ determined that Mr. Kinley has no past relevant work but that considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform. [*Id.* at 26.] The ALJ cited the vocational expert's testimony that given his limitations, Mr. Kinley could perform the positions of hand packager, church janitor, and hospital cafeteria worker. [*Id.*] Based on these findings, the ALJ concluded that Mr. Kinley was not disabled. [*Id.*]

## IV.
### DISCUSSION

Mr. Kinley challenges the ALJ's decision for a variety of reasons, which the Court consolidates and restates as follows:  1) that the ALJ erred by relying on medical expert Dr. Fischer instead of Mr. Kinley's treating sources, and by cherry-picking evidence supporting Dr. Fischer's conclusion; 2) that the ALJ erred by accounting for Mr. Kinley's moderate difficulties in concentration, persistence, and pace by limiting him to simple, repetitive tasks; 3) that the ALJ failed to address Mr. Kinley's testimony that he suffers from debilitating migraine headaches; and 4) that the ALJ erroneously determined that Mr. Kinley was not credible for a variety of reasons, including that he could engage in various activities of daily living.

The Commissioner defends the ALJ's decision on all but the last point, which the Court finds to be an appropriate place to begin its analysis.

### A.  Relying on Activities of Daily Living

The ALJ found that Mr. Kinley engaged in the following daily activities:

> watching television; playing video games; feeding his dog; and visiting with friends.  He can perform all of his personal hygiene activities independently, such as feeding and bathing himself, and prepar[ing] his own meals.  Other various household chores [Mr. Kinley] can perform include laundry tasks and mowing the yard.  He leaves his home daily and visits with friends.  He can go shopping, but cannot handle money, per third party reports.  Other social

> activities include going to church, working[3], movies, going to library, basketball, and talking with friends. No problems in getting along with others were reported. He experiences problems with reading, and clearly does better with verbal instructions.

[Dkt. 14-2 at 24.] The ALJ made an adverse credibility finding regarding Mr. Kinley's allegations of pain, other symptoms, and functional limitations. [*Id.*]

Mr. Kinley argues that the ALJ improperly relied on these activities of daily living in making an adverse credibility finding. [Dkt. 18 at 33.] The Commissioner does not respond to this argument, and it is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response. *See Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002) (holding that in response to a motion, "[a] party waives any argument that it does not raise before the district court").

An ALJ can consider a claimant's daily activities when assessing his alleged symptoms, but the Seventh Circuit Court of Appeals has "cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home." *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (referencing 20 C.F.R. § 404.1529). Just last month, that Court strongly criticized the common practice of ALJs equating activities of daily living to employment. Specifically, "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and

---

[3] It is unclear why the ALJ says that Mr. Kinley works, considering he found he has not engaged in substantial gainful activity since the date of the application and has no past relevant work. If the ALJ was referring to Mr. Kinley's limited employment with CVS through a high school vocational program, as Mr. Kinley points out, the ALJ ignored that Mr. Kinley lost that job because he missed too much work because of his functional impairments, even though CVS tried to accommodate his limitations. [Dkt. 18 at 31.]

is not held to a minimum standard of performance, as [he] would be by an employer." *Hughes v. Astrue*, --- F.3d ---, 2013 U.S. App. LEXIS 1012, *6-7 (7th Cir. 2013).

The Court agrees with Mr. Kinley that the ALJ erred by relying on his basic activities of daily living to support an adverse credibility finding. While some of Mr. Kinley's activities may properly be considered, such as his ability to leave the house, the ALJ relies on numerous improper considerations, such as Mr. Kinley's ability to feed, bathe, and eat independently and do household chores. The ALJ also ignored that Mr. Kinley lives with his parents, who are his legal guardians and can assist him with various activities of daily living. Because the Commissioner does not respond to Mr. Kinley's argument and the Court cannot conclude that this error was harmless, this case must be reversed and remanded.

### B. Limitation to Simple, Repetitive Tasks

Mr. Kinley points to another error with the ALJ's decision—the ALJ attempted to account for Mr. Kinley's psychological limitations by limiting him to simple, repetitive tasks. [Dkt. 18 at 25 (referencing dkt. 14-2 at 21).] Specifically, the ALJ found Mr. Kinley's difficulties with regard to concentration, persistence, and pace to be "moderate" but concluded that "a restriction to simple repetitive tasks encompasses that restriction." [Dkt. 14-2 at 21.] The Commissioner argues that the testimony of medical expert Dr. Thomas supports the ALJ's conclusion. [Dkt. 19 at 13.]

The Seventh Circuit has repeatedly held that limiting a claimant who has limitations of concentration, persistence, and pace to "simple, routine tasks" "d[oes] not adequately account for the plaintiff's medical limitations, including an impairment in concentration." *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009); *see also O'Connor-Spinner v. Astrue*, 627 F.3d at 614, 618-19 (7th Cir. 2010) (limiting claimant to "routine, repetitive tasks with simple instructions"

did not account for "moderate limitation on concentration, persistence and pace")[4]; *see also* Social Security Ruling 85-15, 1985 WL 56857, *6 (SSR 1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

The ALJ attempted to distinguish the *Stewart* case in his opinion with the following language:

> With regard to concentration, persistence or pace, the claimant has more "moderate" difficulties. Thus, no functional consequence of the claimant's limitation in this area are found beyond an inability to sustain detailed or complex work processes, and, in the case at hand, a restriction to simple repetitive tasks encompasses that restriction. The Administration's regulations require categorization of the claimant's level of mental functioning using different terms at steps three and four of the sequential evaluation, but nothing is found to indicate that the claimant's "moderate" deficiency at step three represents a separate functional limitation, or one that is different in degree, from the restriction to simple, repetitive tasks that I have assessed below, at step four. (*Cf. Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2009)).

[Dkt. 14-2 at 21.]

The Court is aware of a growing trend reflecting the use of similar, and in some cases nearly identical, language in ALJ opinions discussing the step three analysis. *See, e.g.*, *Nickerson v. Astrue*, 2013 U.S. Dist. LEXIS 15817 (S.D. Ind. 2013). The Court finds this language confusing and essentially meaningless, and cautions that the use of this language does not excuse compliance with *Stewart* and other cases requiring the ALJ to specifically consider and address how a claimant's impairments will affect his ability in the workplace, rather than simply crafting an RFC that exempts them from certain types of work.

---

[4] While *O'Conner-Spinner* sets forth some exceptions to this rule, the Commissioner did not argue that an exception to the general rule applies.

The Court concludes that, unlike in *Nickerson*, the ALJ here did not build a logical bridge from his finding that Mr. Kinley suffered from moderate difficulties with concentration, persistence, and pace to his conclusion that a restriction to simple, repetitive tasks was adequate. The Commissioner argues that the testimony of medical expert Dr. Thomas supports the ALJ's conclusion, [dkt. 19 at 13], but the ALJ did not reference Dr. Thomas' testimony as support for that conclusion, [dkt. 14-2 at 21]. The Court cannot rely on the Commissioner's *post-hoc* rationale for the ALJ's decision. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (emphasizing that the *Chenery* doctrine "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced"). The Commissioner presents no other argument on this point, and the Court concludes that this is another basis on which to reverse and remand this action.

### C. Additional Arguments

Because the Court has already determined that remand is appropriate on two separate bases, it will only summarily address the additional arguments raised by Mr. Kinley.

#### 1) Evidence of Migraine Headaches

Throughout his brief, Mr. Kinley argues that the ALJ ignored evidence of Mr. Kinley's migraine headaches. [Dkt. 18 at 22 (pointing out that Dr. Fischer did not remember any evidence of migraines), 29 (arguing that the ALJ failed to address Mr. Kinley's testimony about his migraines), 33 ("Notably, the ALJ completely failed to address the claimant's testimony that he suffered from regular migraine headaches . . . .").] But as the Commissioner points out, the ALJ acknowledged evidence of Mr. Kinley's migraines but cited evidence from Mr. Kinley's neurologist that he was considered to be stable. [Dkt. 14-2 (citing dkt. 14-9 at 68-71 (medical records noting that on three out of four visits, Mr. Kinley represented he was not having

migraines).]  Therefore, the Court concludes that the ALJ did not err by concluding that "the medical evidence in the record fails to support that these migraines occur at a frequency that would impose any work restrictions."  [Dkt. 14-2 at 19.]

### 2) *Weight Given to Treating Physicians' Opinions*

Mr. Kinley criticizes the ALJ's decision to rely on the opinion of medical expert Dr. Fischer instead of on the opinions of his treating physicians that he had muscle weakness in his legs that caused functional limitations.  [Dkt. 18 at 19-25.]  He argues that Dr. Fischer's testimony was based on an "incomplete and inaccurate review of the medical evidence" because Dr. Fischer ignored evidence of Mr. Kinley's weakened lower extremity strength.  [*Id.* at 22.]  In a related argument, Mr. Kinley argues that both Dr. Fischer and the ALJ cherry-picked the evidence supporting their conclusions while ignoring other evidence favoring a disability finding.  [*Id.* at 25-27.]

While the Commissioner acknowledges that there is evidence in the record supporting Mr. Kinley's weakened leg muscle strength, it emphasizes that Dr. Fischer and the ALJ relied on a report by Dr. Djodjeva that Mr. Kinley had "muscle strength [of] 5 out of 5 in all muscles." [Dkt. 19 at 10 (citing dkt. 14-10 at 52).]  As an initial matter, the Court notes that the ALJ actually cited a report from Dr. Rhoades, not Dr. Djodjeva, that Mr. Kinley had a strength assessment of "at least 5-5" throughout.  [Dkt. 14-2 at 23 (citing dkt. 14-10 at 103).]  While this may be harmless error since the doctors' conclusions are the same, consistent with the *Chenery* doctrine, the Commissioner should be careful to only rely on the evidence the ALJ relied upon to support his conclusions.  [Dkt. 19 at 10 (referencing dkt. 14-10 at 52).]

Generally, a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not

inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2).[5] If the ALJ decides not to give the physician's opinion controlling weight and articulates a good reason for such a decision, the ALJ still must decide what weight to give the opinion. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); 20 C.F.R. § 404.1527(c)(2). In determining the weight to give the opinion, the ALJ should consider the following factors: 1) the treatment relationship, including the length, nature, and extent of the relationship and the frequency of examinations; 2) the supportability and consistency of the opinion with the record as a whole; 3) whether the physician is a specialist; and 4) any other factors the claimant or others bring to the attention of the ALJ. 20 C.F.R. § 404.1527(c)(2)-(6).

An ALJ who concludes that the treating physician's opinion is inconsistent with or unsupported by other evidence must provide an explanation, "and his failure to do so constitutes error." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). The Court is mindful that the standard of review on a challenge to an ALJ's findings is highly deferential, but that deference is not limitless. "[A]n ALJ has the obligation to consider *all* relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted) (emphasis added). An ALJ need not mention every piece of evidence, but he must build a logical bridge from the evidence to his conclusion. *Id.* "It is not enough for the ALJ to address mere portions of a doctor's report." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

The Commissioner admits that in relying on Dr. Fischer instead of on Mr. Kinley's treating physicians, the ALJ erroneously characterized a statement from one of those physicians (Dr. Rhoades) as that of a nurse practitioner. [Dkt. 19 at 11.] The Commissioner contends this

---

[5] Effective March 26, 2012, 20 C.F.R. 404.1527 was amended with paragraphs (d) through (f) redesignated as paragraphs (c) through (e). *See* 77 Fed. Reg. 10651, 10656 (Feb. 23, 2012).

was harmless error because it was clear at the hearing that the ALJ recognized the statement as that of a doctor, not a nurse practitioner. [*Id.* (citing dkt. 14-2 at 39-40).] But even if the ALJ recognized that distinction at the November 1, 2010 hearing, the opinion two months later mischaracterizing that evidence is still troubling because an opinion from a nurse practitioner is entitled to less weight since it is not from an acceptable medical source. 20 C.F.R. § 404.1513.

Additionally, Dr. Fischer acknowledged that Mr. Kinley was diagnosed with muscular dystrophy as a child, [dkt. 14-2 at 37], and Mr. Kinley cites evidence the ALJ ignored supporting his weakened muscular state, [dkt. 18 at 26-27]. While it is possible that the ALJ could have reached the same conclusion regarding Mr. Kinley's functional limitations by acknowledging contrary evidence in the record and building a logical bridge supporting his rationale, that did not happen. Given the multiple bases for reversal, the Court will not go into further detail regarding the ALJ's reliance on Dr. Fischer's opinion, but the Court reminds the ALJ that on remand, he must consider Mr. Kinley's good days and bad days and determine whether he can hold down a full-time job given the existence of both. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job.").

## V.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Kinley benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

- 13 -

02/08/2013

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Timothy E. Burns
KELLER & KELLER
timb@2keller.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com